# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# CRIMINAL CASE NO. 2:12-cr-00031-MR-DLH

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>vs. )<br>)<br>)<br>STEVEN WALLACE. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss [Doc. 13].

The Defendant is charged in a Bill of Indictment with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). [Doc. 1]. The Defendant now moves to dismiss the Indictment, arguing that he had a Second Amendment right to possess the shotgun that was recovered from his residence. [Doc. 13]. For the reasons that follow, the Defendant's Motion to Dismiss is denied.

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In District of Columbia v. Heller, the United States Supreme Court concluded

that the Second Amendment protects an individual right of "law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. 570, 635, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). In so holding, however, the Court also acknowledged that "[l]ike most rights, the rights secured by the Second Amendment is not unlimited," and proceeded to identify various "presumptively lawful regulatory measures" which may be used to limit such right, such as the "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626-27, 128 S.Ct. 2783.

In light of Heller, the Fourth Circuit developed a two-step framework for analyzing Second Amendment challenges. United States v. Chester, 628 F.3d 673, 678 (4th Cir. 2010). The first step requires the Court to determine "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee," an inquiry which requires the Court to consider "whether the conduct at issue was understood to be within the scope of the right at the time of ratification." Id. at 680 (citations omitted). If the Court determines that the challenged law "burdens conduct that was within the scope of the Second Amendment as

2

historically understood," then the Court moves to the second step of the inquiry, which requires the application of "an appropriate form of means-end scrutiny." Id.

Applying this framework, the Fourth Circuit in United States v. Moore, 666 F.3d 313 (4th Cir. 2012), held that 18 U.S.C. § 922(g)(1) is constitutional, both on its face and as applied to that defendant. In so holding, the Fourth Circuit explicitly recognized that "the Chester analysis is more streamlined" in cases where the challenged law is one of the "presumptively lawful regulatory measures" identified in Heller. Moore, 666 F.3d at 318. While recognizing the "possibility that a case might exist in which an as-applied Second Amendment challenge to § 922(g)(1) could succeed," id. at 320, the Court emphasized that, for such a showing to be made, the defendant must show that his conduct falls "within the category of citizens to which the Heller court ascribed the Second Amendment protection of 'the right of *law-abiding responsible* citizens to use arms in defense of hearth and home." Id. at 319 (quoting Heller, 554 U.S. at 635, 128 S.Ct. 2783). Given the defendant's extensive criminal history in Moore, the Fourth Circuit readily dismissed the defendant's as-applied claim, noting that "Moore's three prior felony convictions for common law robbery and two prior convictions for assault with a deadly weapon on a

3

government official clearly demonstrate that he is far from a law-abiding, responsible citizen." Id. at 319-20. Moreover, the Court rejected the defendant's proffered reason for carrying the firearm (namely his fear of being robbed), as "far too vague and unsubstantiated to remove his case from the typical felon in possession case." Id. at 320.

Here, as in Moore, the Defendant has completely failed to "show that his factual circumstances remove his challenge from the realm of ordinary challenges." Moore, 666 F.3d at 319. First, the Defendant "can hardly be considered a 'law-abiding responsible citizen.'" United States v. Smoot, 690 F.3d 215, 221 (4th Cir. 2012). Prior to the present charge, the Defendant had been convicted of four felonies, including convictions for possession of drug paraphernalia, failure to appear, conspiracy to manufacture methamphetamine, and sale of a Schedule II controlled substance (methamphetamine). Additionally, at time of his arrest on the present charge, he was a fugitive from justice on a probation warrant and on new felony narcotic offenses and a felony failure to appear. Under these circumstances, the Defendant "undoubtedly flunks the 'law-abiding responsible citizen' requirement." Moore, 666 F.3d at 320. Moreover, even accepting as true the Defendant's claim that he possessed the shotgun solely for the purpose of self-protection against intruders and wild animals,

4

a contention that the Government vigorously disputes,[1] the Defendant's vague and unsubstantiated claim of self-defense is clearly insufficient "to remove his case from the typical felon in possession case." Id. For the foregoing reasons, the Court concludes that the Defendant has failed to rebut the presumption that § 922(g)(1) is lawful as applied to him.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss [Doc. 13] is **DENIED**.

**IT IS SO ORDERED**.

Signed: July 10, 2013

Martin Reidinger
United States District Judge

---

[1] The Government contends that at the scene of his arrest, the Defendant told law enforcement officers, after receiving Miranda warnings, that he had just received the shotgun the previous day "on pawn" in exchange for a loan of $50. The Government further contends that there was no ammunition for the shotgun found in the house. [Doc. 15].